**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1290

COURTHOUSE NEWS SERVICE,

        Plaintiff – Appellee,

    v.

GEORGE SCHAEFER, in his official capacity as Clerk of the Circuit Court for Norfolk, Virginia; JACQUELINE SMITH, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia,

        Defendants – Appellants,

------------------------------

REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS; ALM MEDIA, LLC; THE ASSOCIATED PRESS; ATLANTIC MEDIA INC.; BOSTON GLOBE MEDIA PARTNERS, LLC; CALIFORNIA NEWS PUBLISHERS ASSOCIATION; FIRST LOOK MEDIA WORKS, INC.; INTERNATIONAL DOCUMENTARY ASSOCIATION; INVESTIGATIVE REPORTING WORKSHOP AT AMERICAN UNIVERSITY; INVESTIGATIVE STUDIOS; THE MEDIA INSTITUTE; MPA - THE ASSOCIATION OF MAGAZINE MEDIA; NATIONAL ASSOCIATION OF BROADCASTERS; NATIONAL FREEDOM OF INFORMATION COALITION; NATIONAL PRESS CLUB JOURNALISM INSTITUTE; THE NATIONAL PRESS CLUB; NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION; THE NEWS LEADERS ASSOCIATION; NEWSGUILD-CWA, The; RADIO TELEVISION DIGITAL NEWS ASSOCIATION; THE SOCIETY OF ENVIRONMENTAL JOURNALISTS; SOCIETY OF PROFESSIONAL JOURNALISTS; VIRGINIA COALITION FOR OPEN GOVERNMENT; VIRGINIA PRESS ASSOCIATION; THE E. W. SCRIPPS COMPANY; THE NEW YORK TIMES COMPANY; SINCLAIR BROADCAST GROUP, INCORPORATED; GANNETT COMPANY, INCORPORATED; POLITICO LLC,

        Amici - Supporting Appellee,

No: 20-1386

COURTHOUSE NEWS SERVICE,

        Plaintiff – Appellee,

   v

GEORGE SCHAEFER, in his official capacity as Clerk of the Circuit Court for Norfolk, Virginia; JACQUELINE SMITH, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia,

        Defendants – Appellants,

------------------------------

REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS; ALM MEDIA, LLC; THE ASSOCIATED PRESS; ATLANTIC MEDIA INC.; BOSTON GLOBE MEDIA PARTNERS, LLC; CALIFORNIA NEWS PUBLISHERS ASSOCIATION; FIRST LOOK MEDIA WORKS, INC.; INTERNATIONAL DOCUMENTARY ASSOCIATION; INVESTIGATIVE REPORTING WORKSHOP AT AMERICAN UNIVERSITY; INVESTIGATIVE STUDIOS; THE MEDIA INSTITUTE; MPA - THE ASSOCIATION OF MAGAZINE MEDIA; NATIONAL ASSOCIATION OF BROADCASTERS; NATIONAL FREEDOM OF INFORMATION COALITION; NATIONAL PRESS CLUB JOURNALISM INSTITUTE; THE NATIONAL PRESS CLUB; NATIONAL PRESS PHOTOGRAPHERS ASSOCIATION; THE NEWS LEADERS ASSOCIATION; NEWSGUILD-CWA, The; RADIO TELEVISION DIGITAL NEWS ASSOCIATION; THE SOCIETY OF ENVIRONMENTAL JOURNALISTS; SOCIETY OF PROFESSIONAL JOURNALISTS; VIRGINIA COALITION FOR OPEN GOVERNMENT; VIRGINIA PRESS ASSOCIATION; THE E. W. SCRIPPS COMPANY; THE NEW YORK TIMES COMPANY; SINCLAIR BROADCAST GROUP, INCORPORATED; GANNETT COMPANY, INCORPORATED; POLITICO LLC

        Amici - Supporting Appellee.

Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. Henry Coke Morgan, Jr., Senior District Judge. (2:18-cv-00391-HCM-LRL)

Argued: March 9, 2021                                    Decided: June 24, 2021

Before MOTZ, KING and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge King and Judge Wynn joined.

**ARGUED:** Michael Gordon Matheson, THOMPSONMCMULLAN, P.C., Richmond, Virginia, for Appellants. William Jonas Hibsher, BRYAN CAVE LEIGHTON PAISNER LLP, New York, New York, for Appellee. Jennifer Anne Nelson, REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, Washington, D.C., for Amici Curiae. **ON BRIEF:** William D. Prince IV, THOMPSONMCMULLAN, P.C., Richmond, Virginia, for Appellants. Heather S. Goldman, Bryan J. Harrison, BRYAN CAVE LEIGHTON PAISNER LLP, Washington, D.C.; Conrad M. Shumadine, WILLCOX & SAVAGE, P.C., Norfolk, Virginia, for Appellee. Bruce D. Brown, Katie Townsend, Caitlin Vogus, William Powell, REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, Washington, D.C., for Amici Curiae The Reporters Committee for Freedom of the Press and 28 Media Organizations.

DIANA GRIBBON MOTZ, Circuit Judge:

Courthouse News brought this action after its reporters could not obtain prompt access to newly filed civil complaints from two Virginia courts. After a four-day bench trial, the district court found that the Clerks of those courts had not made the complaints timely available to the press and public, violating the First Amendment right of access to such documents. Accordingly, the district court granted a declaratory judgment so holding, which the Clerks now appeal. We affirm.

I.

Courthouse News is a news service that reports on civil litigation in state and federal courts throughout the country. It assigns reporters to cover federal and state courthouses. One of its publications — the New Litigation Report — provides summaries of newsworthy civil complaints filed each day. To compile the summaries, reporters typically visit their assigned courthouses near the end of each business day to review and report on the complaints filed that day.

Among the courts covered by Courthouse News are the Circuit Courts of the City of Norfolk and County of Prince William, Virginia. The Clerks of those courts — George E. Schaefer and Jacqueline C. Smith, respectively — act as the custodians of all records, including civil complaints, in their respective courts.

In fall 2017, when reporters from Courthouse News began daily coverage of the Norfolk and Prince William courts, they experienced delays accessing newly filed civil complaints. The reporters started to track the delays, measuring the difference between the

4

filing date of a complaint and the time at which it became available to them over a period of several months ("the tracking period"). In July 2018, after several months of tracking, Courthouse News filed this suit against the Clerks. It sought declaratory and injunctive relief, alleging that between January and June of 2018, the Clerks unnecessarily delayed access to newly filed civil complaints in violation of the First Amendment.

After resolving preliminary motions, the district court conducted a bench trial. At the trial's conclusion, the court issued a detailed opinion granting a declaratory judgment but denying injunctive relief. The court held that the First Amendment guarantees the press and the public a contemporaneous right of access to newly filed civil complaints, which requires courts to make complaints available as soon as practicable. The district court then carefully applied this standard to the facts in this case and concluded that the Clerks had not provided sufficiently prompt access to the requested documents.

Upon review of the evidence and expert testimony offered at trial, the court made detailed findings concerning the duration and frequency of delays throughout the tracking period. The district court found that, at times, the portion of complaints made promptly available was quite low. For example, in May 2018, the City of Norfolk court made only 19% of the complaints available on the day of filing, and 22% of the complaints were not available until two or more court days after filing. Similarly, in July 2018, the Prince William County court only made 42.4% of the complaints available on the day of filing and 41.5% of the complaints were not available until two or more court days after filing.

The district court also found that after Courthouse News filed suit, both Clerks significantly improved access to documents in their courts without hiring any new

5

employees or changing employee or court hours. By the end of November 2018, the Norfolk City court made 92.3% of newly filed civil complaints available on the day of filing and 100% of complaints available within one court day of filing. Similarly, for the last three months of the tracking period, the Prince William County court made at least 88.1% of the complaints available on the day of filing and approximately 96.5% of complaints were available within one day of filing.

In light of these facts, the district court held that in order to satisfy the First Amendment's access requirement, the Clerks must make newly filed civil complaints available on the same day of filing when practicable, and where not practicable by the end of the next court day. The court went on to explain that minor deviations from this standard or deviations due to extraordinary circumstances would not amount to constitutional violations. Given that both Clerks had fallen far short of this standard without any justification for the delays, the court concluded that they had denied Courthouse News's First Amendment right of access.

The Clerks timely noted this appeal.

## II.

The Clerks raise several procedural arguments, some of which challenge our jurisdiction. We address these issues before turning to the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

A.

First, the Clerks argue that this case is moot because they have minimized document-access delays since Courthouse News initiated this suit.

A case becomes moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)). But "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). We refer to this nuance in the rules of mootness as the voluntary cessation doctrine. *Id.* Without it, "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* A defendant asserting mootness thus "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).

The Clerks do not attempt to meet this high burden. Instead, they argue that voluntary cessation requires evidence of a formal change in policy or practice — evidence that is absent from the record here. They are wrong. Whenever "a defendant retains the authority and capacity to repeat an alleged harm, a plaintiff's claims should not be dismissed as moot." *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014). While the Clerks' improvements in rates of access are commendable, absent the relief Courthouse News sought, "nothing bars [them] from reverting" to the allegedly unconstitutional rates of

7

access in the future. *Porter v. Clarke*, 852 F.3d 358, 365 (4th Cir. 2017). The case is thus not moot.[1]

## B.

The Clerks also argue that the district court erred in refusing to abstain. We review a court's refusal to abstain under a deferential abuse of discretion standard. *Town of Nags Head v. Toloczko*, 728 F.3d 391, 395 (4th Cir. 2013).

Ordinarily, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). But the Supreme Court has recognized some "carefully defined" situations in which courts may abstain. *New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989). To ensure that abstention remains "the exception, not the rule," *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236 (1984), federal courts may abstain only if a case falls into one of these "specific doctrines," *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007).

---

[1] The Clerks also contend that the district court lacked jurisdiction to award declaratory relief due to a lack of immediacy. That argument also fails. A court may exercise jurisdiction over a suit for declaratory judgment when "(1) the complaint alleges an 'actual controversy' between the parties of 'sufficient immediacy and reality to warrant issuance of a declaratory judgment;' (2) the court possesses an independent basis for jurisdiction over the parties (*e.g.*, federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." *Volvo Const. Equipment NA, Inc. v. CLM Equipment Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (quoting 28 U.S.C. § 2201). All these conditions have been met here.

The Clerks rely on *Younger v. Harris*, 401 U.S. 37 (1971), *O'Shea v. Littleton*, 414 U.S. 488 (1974), and *Rizzo v. Goode*, 423 U.S. 362 (1976), to maintain that the district court erred in refusing to abstain. But none of these cases justifies abstention here.

*Younger* and its progeny limit injunctive relief that would interrupt "an ongoing state judicial proceeding." *Nivens v. Gilchrist*, 319 F.3d 151, 153 (4th Cir. 2003). The Supreme Court has been explicit that *Younger* abstention is impermissible "[a]bsent any pending proceeding in state tribunals." *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (emphasis omitted). Here, the Clerks have not pointed to any ongoing state proceeding with which this case would interfere and we know of none. The Clerks' reliance on *Younger* abstention is therefore misplaced.

*Rizzo* and *O'Shea* similarly provide no basis for abstention here. Unlike the instant dispute, those cases concern a federal court's ability to issue specific injunctive relief — in each case, the Supreme Court held that the injunctive relief at issue was inappropriate. *Id.* at 377; *O'Shea*, 414 U.S. at 499. We need not determine whether *Rizzo* and *O'Shea* would limit injunctive relief here, however, because the district court *denied* injunctive relief and Courthouse News has not cross-appealed that denial. Moreover, we note that a holding that the injunction Courthouse News sought was beyond the district court's power would not undermine that court's ability to grant the request for declaratory judgment. *See Steffel v. Thompson*, 415 U.S. 452, 462 (1974) ("When no state proceeding is pending . . . the propriety of granting federal declaratory relief may properly be considered independently

9

of a request for injunctive relief."). *Rizzo* and *O'Shea* therefore do not support the Clerks' argument that the district court erred in refusing to dismiss this case.[2]

In sum, given the lack of any pending state proceeding or the district court's grant of any injunctive relief, *Younger*, *Rizzo*, and *O'Shea* offer the Clerks no assistance. The district court did not abuse its discretion in denying the Clerks' motion to abstain.

C.

The Clerks also assert that the district court erred in denying their motion to dismiss for misjoinder. We again review for abuse of discretion. *See Hinson v. Nw. Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001).

The Federal Rules of Civil Procedure permit multiple defendants to be joined in one action if "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). The Clerks acknowledge that the claims in this case involve common questions of law and fact. They contend, however, that those claims do not arise out of the same transactions or occurrences.

---

[2] Nor does *Courthouse News Serv. v. Brown*, 908 F.3d 1063 (7th Cir. 2018), on which the Clerks heavily rely, help them here. There, the Seventh Circuit did reverse the district court — but the district court had *granted* a preliminary injunction. Moreover, in reversing that grant of injunctive relief, the Seventh Circuit recognized that none of the "principal categories of abstention" constituted "a perfect fit." *Id.* at 1071. Instead, it based its "decision on the more general principles of federalism." *Id*. Such an approach is inconsistent with our precedent and Supreme Court guidance. *See Martin*, 499 F.3d at 364 ("[T]he Supreme Court has *never* allowed abstention to be a license for freeform ad hoc judicial balancing of the totality of state and federal interests in a case.").

But "[a]bsolute identity of all events is unnecessary" for joinder. *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). Instead, Rule 20 permits joinder of "all reasonably related claims for relief by or against different parties." *Id.* (quoting *Mosley*, 497 F.2d at 1333). For this reason, two claims arise from the same transaction — and therefore can be joined in the same action — when there is a "logical relationship" between them. *See, e.g.*, *In re EMC Corp.*, 677 F.3d 1351, 1357–58 (Fed. Cir. 2012); *In re Prempro Prods. Liability Litigation*, 591 F.3d 613, 622–23 (8th Cir. 2010). Courthouse News alleged identical claims against similarly situated defendants. The claims arose out of Courthouse News's coverage of Virginia courts, and the complaint alleged that delays in access occurred for similar reasons. The joinder standard is met here, and the district court did not abuse its discretion in holding joinder appropriate.[3]

### III.

We turn to the merits. Courthouse News asserts that it has a First Amendment right to access newly filed civil complaints.[4] The Clerks acknowledge that the First Amendment

---

[3] Because joinder was permissible here, the Clerks' venue challenge also fails. A federal statute and the district court's local rules establish that venue is appropriate in cases with multiple defendants in a division where at least one defendant resides if all defendants reside in the same state. 28 U.S.C. § 1391(b)(1); E.D. Va. Loc. R. Civ. P. 3(C). These conditions are met here.

[4] We recognize that the Supreme Court has also identified a right of public access rooted in the common law. *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 597 (1978). But "[t]he common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988). Courthouse News does not rely on the common-law right of access here, and so we confine our analysis to the existence of such a right under the First Amendment.

11

does provide such a right in some cases. They contend, however, that it does not assist Courthouse News here.

The First Amendment provides a right of access to a judicial proceeding or record: (1) that "ha[s] historically been open to the press and general public;" and (2) where "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–10 (1986). This test — named for its respective prongs — is known as the "experience and logic" test. *In re United States for an Order Pursuant to 18 U.S.C. § 2603(D)*, 707 F.3d 283, 291 (4th Cir. 2013). If both experience and logic indicate that a judicial record has in the past, and should in the future, be afforded public access, a qualified First Amendment right of public access attaches to it. *Id.*

In this case, with respect to the experience prong, the district court found that "[t]here is no dispute that, historically, courts have openly provided the press and general public with access to civil complaints." *Courthouse News v. Schaefer*, 440 F. Supp. 3d 532, 557 (E.D. Va. 2020).[5] At trial, Courthouse News provided evidence of a nationwide tradition and practice of access to newly filed civil complaints. And at oral argument before us, the Clerks acknowledged the existence of a tradition of openness. Indeed, the Clerks

---

[5] The media's rights of access are "co-extensive with and do not exceed those rights of members of the public in general." *In re Greensboro News Co.*, 727 F.2d 1320, 1322 (4th Cir. 1984). While we recognize that "the press serves . . . to bring to bear the beneficial effects of public scrutiny upon the administration of justice," *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975), our holding and analysis do not rest on any consideration particular to Courthouse News's status as a media organization.

12

have repeatedly emphasized their own commitment to allowing public access to complaints.

But the Clerks contend that there is no tradition of public access to newly filed civil complaints before a court takes some action in a case. This argument rests on the theory that a First Amendment right of access to a judicial record only exists as a byproduct of the right of access to a given judicial proceeding involving that record. For this reason, the Clerks maintain that our cases using the "analytical approach" — under which a court asks if a particular document is "a necessary corollary of the capacity to attend the relevant proceedings" — apply here and compel this conclusion. *Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004)).

That argument misreads precedent — the analytical approach complements the experience and logic test without supplanting it. Of course, a First Amendment right of access exists as to some documents "submitted in conjunction with judicial proceedings that themselves would trigger the right to access." *Id.*; *see also In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986). But that does not mean that the First Amendment right of access to a document never exists independent of and prior to a related judicial proceeding. Rather, the experience and logic test can and sometimes does *independently* furnish the basis for a First Amendment right of access to a judicial document or to judicial proceedings. *See, e.g.*, *In re United States*, 707 F.3d 283 (applying the experience and logic test to § 2703(d) orders); *Baltimore Sun Co v. Goetz*, 886 F.2d 60 (4th Cir. 1989) (same, to search warrant affidavits). And as in a similar case recently decided by the Ninth

13

Circuit, nothing in the record before us demonstrates that the tradition of access to complaints "conditions [that] access on judicial action." *Courthouse News Serv. v. Planet*, 947 F.3d 581, 592 (9th Cir. 2020) ("*Planet III*").[6] In sum, the experience prong supports a First Amendment right of access to civil complaints, even before any judicial action in the case.

Moving to the logic prong, we have no trouble concluding that public access to complaints logically plays a positive role in the functioning of the judicial process. The Supreme Court has recognized that openness of the judicial process — especially through the press's reporting — "affords citizens a form of legal education and hopefully promotes confidence in the fair administration of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) (plurality opinion) (quoting *State v. Schmitt*, 139 N.W.2d 800, 807 (1966)). And access allows the public to "participate in and serve as a check upon the judicial process — an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 606 (1982).

It would be impossible for the public to perform this role adequately without access to nonconfidential civil complaints. "A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision."

---

[6] Accordingly, the case at hand differs markedly from *ACLU v. Holder*, 652 F. Supp. 2d 654 (E.D. Va. 2009), on which the Clerks rely. There, the district court held that there is no First Amendment right of access to sealed, qui tam False Claims Act complaints, because such documents are filed pursuant to a specific statutory scheme that mandates "secrecy" and had, for twenty-three years, never been challenged on First Amendment grounds. *Id*. at 662–63.

*Fed. Trade Comm'n v. Abbvie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013).  Complaints are thus much like the docket sheets in *Doe*, to which we held the public has a First Amendment right of access.  *Doe*, 749 F.3d at 268–69.  Because they allow the public to understand the parties involved in a case, the facts alleged, the issues for trial, and the relief sought, access to complaints, like access to docket sheets, is crucial to "not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary." *Doe*, 749 F.3d at 266; *see also Planet III*, 947 F.3d at 592 (noting that "[p]ublic access to civil complaints . . . buttresses the institutional integrity of the judiciary.").

The Clerks do not argue to the contrary.  Instead, they again quarrel with when access is required.  They contend that the logic prong does not require contemporaneous access to newly filed civil complaints.

This argument ignores the immediate consequences precipitated by filing a complaint, consequences that the public must promptly understand if it is to help "improve the quality of [the judicial] system by subjecting it to the cleansing effects of exposure and public accountability."  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 587 (1976) (Brennan, J., concurring).  For example, a complaint instantaneously invokes a court's jurisdiction, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990), and jurisdictional questions often implicate "the public's confidence" in judicial power, *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011).  Moreover, a complaint carries significant implications for "the parties' substantive legal rights and duties," by, among other things, triggering an obligation to preserve evidence and, in some cases, triggering a statute of limitations.  *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d

15

132, 140 (2d Cir. 2016). This is especially true given that some complaints are withdrawn or cause the parties to settle before any judicial action is taken. *Accord Planet III*, 947 F.3d at 592. The press and public thus have an important interest in reasonably contemporaneous access to civil complaints.

In sum, both the experience and logic prongs are satisfied here. Accordingly, the press and public enjoy a First Amendment right of access to newly filed civil complaints.

IV.

Finally, we consider the district court's determination that the Clerks violated Courthouse News's right of access to newly filed civil complaints.

Ordinarily, we apply strict scrutiny to examine an asserted infringement of a First Amendment right of access. *Doe*, 749 F.3d at 266; *see Globe Newspaper Co.*, 457 U.S. at 606. But the Supreme Court has instructed that "limitations on the right of access that resemble 'time, place, and manner' restrictions on protected speech [will] not be subjected to such strict scrutiny." *Globe Newspaper Co.*, 547 U.S. at 607 n.17. The Clerks' practices do indeed resemble time, place, and manner restrictions, so we apply more relaxed scrutiny. *See Planet III*, 947 F.3d at 595. In the context of this case, this requires that delays in access be "content-neutral, narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice." *Id.* at 585.

The district court faithfully applied these principles. The court noted that "the public and press generally have a *contemporaneous* right of access to court documents and proceedings when the right applies." *Doe*, 749 F.3d at 272 (emphasis added). It held that

16

"'contemporaneous' in this context means 'the same day on which the complaint is filed, insofar as is practicable;' and when not practicable, on the next court date" — excepting inconsequential deviations and extraordinary circumstances which may, without violating the constitution, delay access. *Schaefer*, 440 F. Supp. 3d at 562. This flexible standard does not require perfect or instantaneous access. Rather, it provides courts with some leeway where same-day access would be impracticable, and fully exempts inconsequential delays and those caused by extraordinary circumstances.

This flexibility accords with precedent in recognizing that the Constitution does not require the impossible. In *Doe*, we defined "contemporaneous" in this context to require that the court act "as expeditiously as possible." *Doe*, 749 F.3d at 273. And in *Richmond Newspapers*, the Supreme Court explained that, though the public has a right of access to criminal proceedings, "since courtrooms have limited capacity, there may be occasions when not every person who wishes to attend can be accommodated." 448 U.S. at 581 n.18.

Evidence produced at trial — including expert testimony — supports the district court's findings as to the necessity and propriety of this flexible standard. The court found that, by the end of the tracking period, the evidence demonstrated that the Clerks provided access to substantially all (almost 90%) of complaints on the day of filing without changing any policies, hiring any new employees, or increasing employees' hours. From this evidence, the district court concluded that it was both possible and practicable to provide same-day access to most newly filed civil complaints. The court noted that the evidence established a significant increase in same-day access by the end of the tracking period — more than doubling same-day access in Prince William County and tripling it in Norfolk

17

City.  The percent of complaints available within one court day after filing similarly improved.  The district court reasonably concluded that this was a substantial improvement over previous months, in which many complaints were not accessible within one court day of filing.

And the district court found that, although the Clerks put forth a variety of possible explanations as to why their delays prior to the filing of this action *might* have been necessary or unavoidable, they failed to offer facts establishing that any of these explanations did actually cause delays.[7]  To be sure, if the Clerks had conclusively demonstrated that delays during this period were substantially more frequent due to some unpreventable circumstance — inclement weather or a security threat, for example — the result might well be different.  But the Clerks offered no evidence that such emergencies caused the delays, and "argument unsupported by the evidence will not suffice to carry the government's burden."  *Reynolds v. Middleton*, 779 F.3d 222, 229 (4th Cir. 2015).

---

[7] The Clerks also reiterate a host of arguments relating to the admissibility and sufficiency of evidence underlying the district court's findings.  However, the district court was under no obligation to accept the testimony of the Clerks' experts over those of Courthouse News and we are loath to second guess the court's determinations.  *Hendricks v. Central Reserve Life Ins. Co.*, 39 F.3d 507, 513 (4th Cir. 1994) (observing that credibility determinations are "best committed to the district court").  Here, the district court engaged in careful factfinding, explicitly discussing and rejecting the Clerks' challenges to the expert testimony when making its credibility determinations.  Thus, we find no basis to deviate from our usual deference to district courts' evidentiary rulings.  Further, the court did not abuse its discretion in holding that the tracking information was admissible, especially given the testimony that such records were kept in the ordinary course of business.  *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 310 (4th Cir. 2006).  Finally, the district court conducted its own review of the raw data submitted in a joint exhibit in order to reach its conclusions — which provides an additional basis to uphold its findings.

V.

The press and public enjoy a First Amendment right of access to newly filed civil complaints. This right requires courts to make newly filed civil complaints available as expeditiously as possible. After considering all of the evidence offered at trial, the district court found that the facts of this case demonstrate that the Clerks did not do so, and so violated the First Amendment. Accordingly, the district court's grant of a careful, nuanced declaratory judgment so holding is

*AFFIRMED.*