**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1808**

---

UNITED STATES EX REL. JON H. OBERG,

>       Plaintiff,

> and

MICHAEL CAMOIN,

>       Movant – Appellant,

> v.

NELNET, INC.; BRAZOS HIGHER EDUCATION SERVICE CORPORATION; BRAZOS HIGHER EDUCATION AUTHORITY, INC.; NELNET EDUCATION LOAN FUNDING, INC.,

>       Defendants – Appellees,

> and

VERMONT STUDENT ASSISTANCE CORPORATION; PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY; KENTUCKY HIGHER EDUCATION STUDENT LOAN CORPORATION; ARKANSAS STUDENT LOAN AUTHORITY,

>       Defendants.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. John F. Anderson, Magistrate Judge. (1:07-cv-00960-CMH-JFA)

---

Argued: May 7, 2024                                    Decided: June 18, 2024

---

Before RICHARDSON, Circuit Judge, KEENAN, Senior Circuit Judge, and Elizabeth K. DILLON, United States District Judge for the Western District of Virginia, sitting by designation.

---

Reversed and remanded by published opinion. Judge Richardson wrote the opinion, in which Judge Keenan and Judge Dillon joined.

---

**ARGUED:** Nandan M. Joshi, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Appellant. Larry Gondelman, POWERS PYLES SUTTER & VERVILLE PC, Washington, D.C., for Appellees. **ON BRIEF:** Leonard A. Bennett, CONSUMER LITIGATION ASSOCIATES, P.C., Newport News, Virginia; Allison M. Zieve, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Appellant.

RICHARDSON, Circuit Judge:

Michael Camoin appeals from the magistrate judge's order denying his request to access summary judgment documents from prior litigation to which he was not a party. He argues that the First Amendment presumptively guarantees him the right to access these documents. We agree, so we reverse the magistrate judge's order and remand for determination of whether maintaining the seal on the requested documents is nonetheless warranted.

## I.      Background

### A.      Facts

In 2007, Jon Oberg filed a lawsuit under the False Claims Act against various student-loan companies, including Nelnet, Inc., Nelnet Education Loan Funding, Inc., Brazos Higher Education Services Corporation, and Brazos Higher Education Authority, Inc. (together, Nelnet and Brazos). Oberg alleged that the companies submitted false claims to the Department of Education to inflate their loan portfolios eligible for interest subsidies. The parties consented to a magistrate judge deciding the case. *See* 28 U.S.C. § 636(c).

On June 4, 2010, after the parties agreed to a protective order for discovery, the companies filed a joint motion for leave to file confidential summary judgment materials under seal. They explained that "sealing is necessary in order to protect the producing party from the harm that could arise from immediate disclosure" of financial information and non-public emails. J.A. 93. They also proposed "that the seal would be maintained for 30 days from the date that the reply briefs to the motions for summary judgment are

3

filed." J.A. 93. Oberg did not oppose but asked that the same relief be afforded to his summary judgment submissions. He also clarified that granting the motions "would temporarily place designated information under seal to give the producing party the opportunity to defend its professed confidentiality interest and would automatically unseal that information after a reasonable period unless the producing party successfully persuades this Court to maintain the confidentiality of the information at issue." J.A. 100.

On June 11, the magistrate judge granted in part the motion to file under seal. He concluded that "allowing the parties to file certain exhibits to their summary judgment motions under seal temporarily would further the ends of due process by allowing those parties and non-parties asserting confidentiality over certain documents the opportunity to move the court to maintain the documents under seal, should they so desire." J.A. 104. But he warned the parties that any motion to maintain an exhibit under seal had to be filed no later than August 20, 2010, after which time the parties would have to file the formerly sealed exhibits electronically with the court.

The companies later filed five summary judgment motions and a joint statement of stipulated facts. Oberg responded by moving for partial summary judgment, as well as by filing a consolidated opposition to the companies' motions. He also filed a declaration in support of his opposition motion, to which he attached exhibits. Finally, Oberg filed a response to the defendants' joint statement of stipulated facts. Oberg's opposition motion, many of his exhibits, and his response to the joint statement of stipulated facts were filed partially or completely under seal.

4

On July 30, 2010, the magistrate judge held a hearing on the pending summary judgment motions. Then, on August 6, the judge held a hearing on a separate motion of the companies: a motion for sanctions based on Oberg's spoliation of evidence. The judge granted the motion but delayed deciding the appropriate sanction for the spoliation. But on August 13—four days before trial was to commence—the judge issued an order staying "all proceedings in this action relating to pending motions and the trial" so the parties could engage in settlement negotiations. J.A. 106. The order also provided that "[w]hile this matter is stayed no pleadings shall be filed other than those related to the resolution of claims by the parties." J.A. 106. Perhaps because of this order, none of the parties moved to seal Oberg's summary judgment materials before the August 20 deadline. Instead, the parties eventually settled, and on October 22, 2010, the magistrate judge dismissed the actions against the companies with prejudice.[1]

## B.    Procedural History

On March 31, 2023, Michael Camoin—a documentary filmmaker who covers the student-loan industry—filed a pro se letter in the district court requesting access to the materials that Oberg filed under seal in connection to his opposition to summary judgment.[2]

---

[1] Litigation continued against several companies dismissed earlier in the action. *See U.S. ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp.*, 681 F.3d 575 (4th Cir. 2012).

[2] The March 31 letter requested copies of the sealed exhibits and Oberg's response to the companies' joint statement of stipulated facts. On April 15, 2023, Camoin sent another letter to the district court requesting access to an unredacted version of Oberg's opposition motion. Although the court never entered this letter in the electronic docket, the magistrate judge considered this request alongside the request in Camoin's March 31 letter. *See* J.A. 169 ("This matter is before the court on movant Michael J. Camoin's motion to unseal portions of plaintiff's consolidated memorandum in opposition to (Continued)

In his letter, Camoin noted that no motion had been filed to maintain the seal on the documents, as required by the district court's June 11 order, and requested that copies be made available. The district court docketed this letter as a motion requesting copies of exhibits formerly under seal and allowed all parties to the original suit until May 5, 2023, to respond to Camoin's request.

Before anyone responded, however, Camoin filed a second letter with the court on April 25, 2023. He explained that he read elsewhere that Oberg had claimed that the settlement agreement would unseal the summary judgment exhibits unless the companies moved to maintain the seal—which they never did.

Nelnet and Brazos eventually filed a joint brief opposing Camoin's request. In their brief, they contended that Camoin's request did not state a basis for a right to access the documents and that, in any event, Camoin had no right to access the documents because the magistrate judge never ruled on the summary judgment motions. But because of their view that Camoin offered no basis for his right to access the documents in his letters, they did not offer reasons that justified maintaining the seal.

Camoin later filed a pro se reply on May 15, 2023, and then a supplemental reply with counsel on June 2, 2023. In those filings, he alleged that he has a common-law and First Amendment right to access the documents.

---

defendants' motions for summary judgment, certain exhibits attached to the memorandum, and portions of plaintiff's response to defendants' joint statement of undisputed material facts.").

6

On July 3, 2023, the magistrate judge denied Camoin's motion. The judge found that Camoin has "no common law or First Amendment right to access the sought documents and portions of documents" because "a document must play a relevant and useful part in the adjudication process for either the First Amendment or common law rights of public access to attach." J.A. 171. But the documents Camoin requested played no such role in the litigation, he concluded, because the case settled before any action on the summary judgment motion. Therefore, "[t]hese motions were never considered or decided by the court, and they had no adjudicative role in this case." J.A. 172. The judge thus held that the documents are not "judicial documents" protected by either the common law or First Amendment and dismissed Camoin's motion. J.A. 172. Camoin then filed a timely notice of appeal.

## II.    Discussion

On appeal, Camoin argues that the magistrate judge erred in holding that he lacks a right of access to Oberg's sealed summary judgment documents.[3] We agree that these documents are protected by the First Amendment right of access. Accordingly, we reverse

---

[3] We pause to note the arguments that the parties have not made. On the one side, Camoin does not argue that he is automatically entitled to access the documents because the temporary sealing order has expired. On the other side, Nelnet and Brazos do not argue that Oberg's response to the joint stipulation of facts was not filed in connection with his summary judgment motion. Accordingly, without passing on the merits of either issue, we find both forfeited. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 376–77 (4th Cir. 2012).

7

the magistrate judge's order and remand for consideration of whether maintaining the seal on these documents is justified under the First Amendment.

## A.     Jurisdiction

Before proceeding to the merits, we must consider our appellate jurisdiction. *United States v. Doe*, 962 F.3d 139, 143 (4th Cir. 2020) ("Federal courts have an independent duty to confirm their own jurisdiction even when, as here, it is unquestioned by the parties.").

Only parties to a lawsuit, or those who properly become parties (*e.g.*, by intervention), may appeal an adverse order or judgment. *Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam); *Diamond v. Charles*, 476 U.S. 54, 68 (1986); *Davis v. Scott*, 176 F.3d 805, 807 (4th Cir. 1999). "The reason for such a rule is obvious: because a nonparty generally is not bound by a judgment, he ordinarily cannot be aggrieved by the judgment to the extent necessary to permit appellate review." *Kenny v. Quigg*, 820 F.2d 665, 667 (4th Cir. 1987). "Moreover, an appellate tribunal is generally not the proper place for a litigant to commence its participation in a case, as is too often the situation for nonparty appellants." *United States v. Under Seal*, 853 F.3d 706, 721 (4th Cir. 2017). Thus, parties and intervenors, but not nonparties, may directly appeal a district court's sealing decision so long as they satisfy the other requirements of our constitutional and statutory jurisdiction.[4] *See, e.g.*, *Doe*, 962 F.3d at 143–44; *Stone v. Univ. of Md. Med. Sys. Corp.*,

---

[4] Naturally, who counts as a "party" is sometimes slippery. *See, e.g.*, *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002) (holding that members of a class who have objected to the proposed settlement of a class action are considered parties for purposes of appealing a judgment that rejects their objections and approves the settlement).

855 F.2d 178, 180 n.* (4th Cir. 1988); *Rushford v. New Yorker Mag.*, 846 F.2d 249, 252 (4th Cir. 1988).

Like most rules, the rule against nonparty appeals is not ironclad. We have recognized a narrow exception—termed "nonparty appellate standing"—that allows a nonparty to appeal a district court's order or judgment when the nonparty "(1) possessed 'an interest in the cause litigated' before the district court and (2) 'participated in the proceedings actively enough to make him privy to the record.'"[5] *Doe v. Pub. Citizen*, 749 F.3d 246, 259 (4th Cir. 2014) (quoting *Kenny*, 820 F.2d at 668). Thus, in *Doe v. Public Citizen*, we allowed a nonparty who failed to intervene in the proceedings below to appeal a district court's sealing order. *Id.* at 259–62. We found that the nonparty possessed a cognizable interest in the cause litigated, since the sealing decision denied its right to access the sealed material. *Id.* at 261. And we concluded that the nonparty participated actively enough in the proceedings, too, since it objected to the motion to seal and filed its own motion to unseal, and the district court fully considered and overruled its objections. *Id.* at 260. Hence, as *Doe* shows, we sometimes relax the rule against nonparty appeals for nonparties with sufficient interest and participation in the challenged proceedings.[6] *See*

---

[5] As with parties and intervenors, a nonparty seeking to appeal must satisfy the constitutional and statutory limits on our jurisdiction, including those stemming from Article III standing and 28 U.S.C. § 1291. *Doe*, 749 F.3d at 262–64.

[6] Whether a nonparty can appeal a district court's order is different from whether a nonparty can participate in proceedings before the district court. District courts sometimes permit nonparties to participate in certain proceedings, including proceedings related to the public's right to access judicial documents. *See, e.g.*, E.D. Va. Local Rule 5(C) (allowing nonparties to object to a motion to seal within seven days of the filing of the motion); *see also Doe*, 749 F.3d at 254, 260. Although Camoin filed his motion years after the sealing (Continued)

*also Kenny*, 820 F.2d at 668 (allowing appeal by a nonparty who filed a memorandum opposing a party's motion for an order before the district court and whose objections the district court considered but rejected); *Under Seal*, 853 F.3d at 721–22 (allowing appeal by nonparty who filed written objections and participated in a hearing contesting disclosure of confidential material).

Appeal, however, is not the sole mechanism for challenging a district court's sealing order. We have also held that a nonparty asserting the public's right to access proceedings or documents who has not intervened and lacks nonparty appellate standing can still seek mandamus review of the district court's sealing decision. *See, e.g.*, *In re Wash. Post Co.*, 807 F.2d 383, 388 (4th Cir. 1986); *Cent. S.C. Chapter, Soc'y of Pro. Journalists v. Martin*, 556 F.2d 706, 707–08 (4th Cir. 1977); *see also Ex parte Uppercu*, 239 U.S. 435, 438 (1915) ("This is a petition for a writ of mandamus to direct the judges and clerk of the district court for the district of Massachusetts to allow the petitioner access to depositions and exhibits on file in a certain case, but now sealed by order of the court."). And if the nonparty without nonparty appellate standing has filed a notice of appeal rather than a petition for mandamus, we will treat his appeal as a petition for mandamus if he has Article III standing and has substantially complied with Rule 21(a) of the Federal Rules of Appellate Procedure.[7] *Wash. Post*, 807 F.2d at 388.

---

decision, Nelnet and Brazos have not contested, here or below, Camoin's ability to make this motion before the district court. We therefore consider any possible objection forfeited.

[7] Precisely why a nonparty asserting a right of access may petition for mandamus is not obvious. It seems incongruous to prohibit nonparties from directly appealing a district (Continued)

Camoin was not a party to the original proceedings between Oberg and the companies. Nor is there any indication that he intervened in the court below. When Camoin filed his first letter, he only requested to view the documents under seal; he did not ask permission to intervene. And the district court never gave such permission. To the contrary, it repeatedly referred to him as "movant" throughout the proceedings. *See, e.g.*, J.A. 169–73. In case there were any doubt on this point, Camoin conceded at oral argument that he did not intervene. So he may not appeal under our normal procedural rules.

---

court's order but allowing them to petition for writs of mandamus. *See* 15A Charles A. Wright et al., *Federal Practice and Procedure: Jurisdiction* § 3902.4 (3d ed. 2023) (calling this a "rather curious rule"). And Rule 21 authorizes "[a] *party*" to petition for the writ and provides that "[a]ll parties to the proceeding in the trial court *other than the petitioner* are respondents for all purposes." Fed. R. App. P. 21(a)(1) (emphasis added). The text of this rule could mean that the party petitioning must in fact be a party in the proceedings below. *See Aref v. United States*, 452 F.3d 202, 207 (2d Cir. 2006) ("We are aware of no authority authorizing a non-party to petition the Court of Appeals for a writ of mandamus in a criminal case."). Yet in *In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)*, we treated our authority to issue mandamus not as stemming from Rule 21(a) but rather from the All Writs Act, 28 U.S.C. § 1651. 707 F.3d 283, 288–89 (4th Cir. 2013); *see also* Fed. R. App. P. 21(c) (noting that appellate courts may issue "an extraordinary writ other than one provided for in Rule 21(a)").

Despite this oddity, we decline to determine here the extent to which nonparties can seek mandamus review. The right of nonparties to petition for writs of mandamus in cases involving the common-law or First Amendment right of access is well-established in our Circuit. *See Martin*, 556 F.2d at 707–08; *Wash. Post*, 807 F.2d at 388; *Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 288–89; *Balt. Sun Co. v. Goetz*, 886 F.2d 60, 63 (4th Cir. 1989); *cf. Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 5 (1986). We therefore are bound to follow the rule in this context. *See United States v. Mindel*, 80 F.3d 394, 398 (9th Cir. 1996) (holding that the rule that a party who lacks standing to appeal can proceed by mandamus has been limited to instances of alleged First Amendment violations); David G. Knibb, *Federal Court of Appeals Manual* § 15:32 (7th ed. 2024) (explaining that the right of third-party media members to petition for mandamus review of sealing decisions is "well-recognized in case law").

Camoin rather contends that he may appeal as a nonparty. Like the nonparty in *Doe*, Camoin has an interest in the case litigated because he claims a right to access judicial records. 749 F.3d at 261. Yet unlike in *Doe*, Camoin did not participate in the original sealing proceedings between the parties; he requested to access the documents long after the litigation was over. The second prong of the nonparty appellate standing test asks whether the nonparty has *actively* participated in the proceedings below such that they are *privy to the record*. *Id.* at 259. We have never applied nonparty appellate standing when the nonparty's only involvement occurred *after* the original proceedings had terminated. *See, e.g.*, *id.* at 260; *Kenny*, 820 F.2d at 668; *Under Seal*, 853 F.3d at 721–22. Given that this doctrine is an exception to an otherwise bright-line jurisdictional rule, we decline to extend it to this context.

Instead, we choose to treat Camoin's appeal as a petition for mandamus. Camoin satisfies the requirements of Article III standing, as he has suffered a constitutional injury traceable to the sealing decision that will be redressed if we reverse that decision. *Wash. Post.*, 807 F.2d at 388 n.4. And he has substantially complied with the requirements of Rule 21(a). We therefore construe his notice of appeal as a petition for mandamus and consider the district court's holding under the standards for granting that form of relief. *See In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987) ("The party seeking mandamus relief carries the heavy burden of showing that he has 'no other adequate means to attain the relief he desires' and that his right to such relief is 'clear and indisputable.'" (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980))).

**B.    Camoin has a presumptive First Amendment right to access Oberg's summary judgment motion and the documents attached to that motion.**

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe*, 749 F.3d at 265. This right "derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). Because there are two sources, the right protected by each varies.

"The common law presumes a right of the public to inspect and copy 'all judicial records and documents.'" *Id.* (quoting *Stone*, 855 F.2d at 180). "[D]ocuments filed with the court are 'judicial records' if they play a role in the adjudicative process[] or adjudicate substantive rights," such as when "they were filed with the objective of obtaining judicial action or relief." *Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 290–91. The finding that a document is a judicial record guarantees only a presumption of access, however, and this presumption can be rebutted by a showing that "countervailing interests heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253. In conducting this balancing test, we consider "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984); *see also United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) (suggesting that "how the person seeking access intends to use the information" bears upon the "nature and degree of injury" from its disclosure).

13

Unlike the common-law right, the First Amendment right of access extends only to certain judicial proceedings and records. *Stone*, 855 F.2d at 180. In particular, the right attaches to any judicial proceeding or record "(1) that has historically been open to the press and general public; and (2) where public access plays a significant positive role in the functioning of the particular process in question." *Courthouse News Serv. v. Shaefer*, 2 F.4th 318, 326 (4th Cir. 2021) (cleaned up) (calling this the "experience and logic" test). It also protects "materials submitted in conjunction with judicial proceedings that themselves would trigger the right of access." *Doe*, 749 F.3d at 267; *Wash. Post*, 807 F.2d at 390. Whenever a proceeding or document is protected by the First Amendment, "access may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'"[8] *Doe*, 749 F.3d at 266 (quoting *Wash. Post*, 807 F.2d at 390). Thus, while common-law protections are broad but shallow, First Amendment protections are narrower but deeper.

This is not the first time we have considered whether the First Amendment right of access applies to the summary judgment materials. In *Rushford v. New Yorker Magazine*, we held that the First Amendment protects the right to access summary judgment motions

---

[8] Though the First Amendment poses a high bar for anyone wishing to seal documents or proceedings, it is not insurmountable. The Supreme Court has previously held that the governmental interest in protecting a defendant's right to a fair trial before an impartial jury or a minor victim's wellbeing is sufficiently compelling to justify closure under the First Amendment. *See Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 510 (1984); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607–08 (1982). We have also suggested that protecting a corporation's confidentiality interest in proprietary and trade-secret information could justify the partial sealing of court records. *See Doe*, 749 F.3d at 269; *cf.* Fed. R. Civ. P. 26(c)(1)(G).

14

and documents "filed in connection with" those motions. 846 F.2d at 253. We began by recognizing that the First Amendment does not prohibit a district court from limiting the disclosure of products of pretrial discovery. *Id.* at 252; *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984). But we explained that "[o]nce the documents are made part of a dispositive motion, such as a summary judgment motion, they 'lose their status of being raw fruits of discovery.'" *Rushford*, 846 F.2d at 252 (quoting *In re "Agent Orange" Prod. Liability Litig.*, 98 F.R.D. 539, 544–45 (E.D.N.Y. 1983)). Unlike discovery, "summary judgment adjudicates substantive rights and serves as a substitute for a trial." *Id.* And because the public has a First Amendment right to attend criminal trials, *see Wash. Post*, 807 F.2d at 388, we found that the public has an equivalent right to access documents filed in connection with civil summary judgment motions, *Rushford*, 846 F.2d at 253; *see also Doe*, 749 F.3d at 268 (holding that the First Amendment also protects access to the judicial decision adjudicating a summary judgment motion). Before a court can limit the public's access to such documents, therefore, it must find that such a limitation is justified under the First Amendment. *Va. Dep't of State Police*, 386 F.3d at 578–79.

In the district court, Camoin requested access to Oberg's opposition to summary judgment motion and the documents attached to that motion. Yet the magistrate judge denied his request. Because the parties settled before any resolution of the summary judgment motions, the judge concluded that the requested documents played "no adjudicative role" in the case and that Camoin therefore has no right access them. J.A. 172. Nelnet and Brazos defend this holding on appeal, arguing that the First Amendment

15

right of access does not apply when a district court specifically holds that those documents played no adjudicative role in the proceedings.

But we decline to adopt such a narrow reading of our case law. Our precedents are clear that the First Amendment right of access to summary judgment materials does not depend on judicial resolution of the summary judgment motion or judicial reliance on the documents in resolving the motion. Rather, as we held in *Rushford*, the First Amendment right attaches "[o]nce the documents are made part of a [summary judgment] motion" and no later. 846 F.2d at 252. That is, once the documents are "*filed* in connection with a summary judgment motion in a civil case," the "more rigorous First Amendment standard" must be satisfied before the public can be denied access. *Id.* at 253 (emphasis added).

This explains why we faulted the district court in *Doe* for temporarily sealing summary judgment documents and then waiting to make a final sealing decision until after it resolved the summary judgment motion nine months later. 749 F.3d at 272. "Because the public benefits attendant with open proceedings are compromised by delayed disclosure of documents," we explained, "the public and press generally have a contemporaneous right of access to court documents and proceedings when the right applies." *Id.* This explanation demonstrates our understanding that the right to access protected documents attaches immediately upon their filing.[9]

---

[9] Of course, nothing in today's holding prohibits a district court from temporarily sealing documents while a motion to seal is under consideration. *See Knight Publ'g*, 743 F.2d at 235 n.1.

All for good reason. The public has an interest in ensuring basic fairness and deterring official misconduct not only in the outcome of certain proceedings, but also in the very proceedings themselves. We protect that interest by granting the public access to those proceedings. *See id.* at 267; *Globe Newspaper*, 457 U.S. at 606 (explaining that public access to trials themselves "enhances the quality and safeguards the integrity of the factfinding process," "fosters an appearance of fairness," and "permits the public to participate in and serve as a check upon the judicial process"); *In re Application & Affidavit for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991) (rejecting a party's request to "releas[e] the information after [the] trial has concluded, when all danger of prejudice will be past," since "the value of openness itself . . . is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public disclosure" (internal quotations omitted)). And a "necessary corollary" of the right to attend protected proceedings is the ability to access documents submitted in conjunction with those proceedings, for only then can members of the public truly understand what has occurred therein. *Doe*, 749 F.3d at 267 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004)); *see also United States v. Antar*, 38 F.3d 1348, 1360 (3d Cir. 1994) ("Access to the documentation of an open proceeding . . . facilitates the openness of the proceeding itself by assuring the broadest dissemination.").

Nelnet and Brazos argue that because the original case settled before a summary judgment ruling, the documents are of little value in understanding what happened in the litigation. But it is up to the public to decide "why the case was brought (and fought)[] and what exactly was at stake in it." *Mueller v. Raemisch*, 740 F.3d 1128, 1135–36 (7th Cir.

17

2014).  And the very arguments made in this appeal show how access to these sealed documents could help answer those questions.  Nelnet and Brazos argue that the original parties settled in response to the district court's finding that Oberg failed to preserve certain evidence.  Camoin, by contrast, notes that they may have settled because of the arguments and evidence presented in the summary judgment proceedings.  But without access to the sealed materials, it is impossible for the public to know which view is correct.  So irrespective of whether a district court ever resolves a summary judgment motion, the public has a presumptive First Amendment right to access documents submitted in connection with it.[10]

Accordingly, we hold that the district court erred in concluding that Camoin has no First Amendment right to access Oberg's opposition to summary judgment motion and the documents attached to it.  Any continued sealing of these documents must be justified under First Amendment scrutiny.

---

[10] The district court, Nelnet, and Brazos rely heavily on our unpublished decision in *In re Policy Management Systems Corp.*, which held that the right of access does not extend to documents attached to a motion to dismiss.  Nos. 94-2254 & 94-2341, 1995 WL 541623, at *3–4 (4th Cir. Sept. 13, 1995) (unpublished).  There we found that "documents filed with a motion to dismiss that are excluded by the court do not play any role in the adjudicative process." *Id.* at *4.  Yet as our published decisions have made clear, documents "filed with the objective of obtaining judicial action or relief" do "play a role in the adjudicative process." *Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d at 290–91. Moreover, *Policy Management* expressly distinguished *Rushford* and explained that if the district court had converted the motion to dismiss into a summary judgment motion, the right of access *would* apply to the attached documents.  1995 WL 541623, at *4 n.5.

*          *          *

We recognize that a writ of mandamus may only issue in extraordinary circumstances. *Wash. Post*, 807 F.2d at 393. But Camoin clears this high bar, for he has no other adequate means to attain relief (because he has no right to appeal), and his First Amendment right of access is clear and indisputable. *Beard*, 811 F.2d at 833–34. We therefore reverse the magistrate judge's order and remand for consideration of whether maintaining the seal on the requested documents is "necessitated by a compelling government interest[] and . . . narrowly tailored to serve that interest." *Wash. Post*, 807 F.2d at 390 (quoting *Press-Enter.*, 464 U.S. at 510).

*REVERSED AND REMANDED*

19